## JONES v. SMITH.

*Adverse possession — division fence — Boundary.*

Where the true boundary line between adjoining farms, as described in the deeds to the respective owners, was a patent line, *held*, that the fact that a brush fence, which for fifty years had divided the farms, was at some dis. tance to one side of that patent line, it appearing that such fence was erected and maintained for convenience only, and had not been at any time recognized and acquiesced in by the admissions and acts of the owners as the line between such farms, would not operate to establish such fence as the true division line.

APPEAL by plaintiffs from a judgment dismissing the complaint.

The action was one of ejectment and was brought by Dudley H. Jones against Elbert O. Smith, to recover a strip of land, about twenty rods wide and seventy rods long, situated in the county of Essex. Subsequent to the trial said Dudley H. Jones died, and Edwin L. Jones and others, his heirs at law and personal representatives, were substituted as plaintiffs.

The original plaintiff and the defendant were owners of adjoining farms; the plaintiff on the west, and the defendant on the east. The true line between them was the patent line, which divided the Montressor and the Ross patents.

The *locus in quo* was situated on or along the east side of the plaintiff's farm, being the west of the defendant's; and was marked on the east by a fence, commencing at the south-east corner of the plaintiff's lot, curving to the east and northerly, running along the brow of a ledge, and thence westerly to a point, supposed to be on the division line between the patents. This fence was mostly of brush with some poles and rails.

In 1866, the defendant removed this fence, and erected a new straight one on what he claimed was the patent line. This fence brought the strip of land in controversy within his inclosure.

The plaintiff made title to his farm under a deed to himself dated December 29th, 1845, and traced the same back through various mesne conveyances to 1820. In the second and third of the six conveyances put in evidence, the plaintiff's premises were bounded on the east by the west line of the Ross patent; and in the other four, on the " east by the east line of the Montressor

patent, as the same ought to be established between that patent and the west line of the Ross patent so called."

The defendant showed-title in himself to the adjoining farm on the east, tracing the same back to 1814. Evidence was given in regard to the occupation of the farms by the respective owners, which as the plaintiff claimed and insisted, established the brush fence as the line between them by practical location. Evidence was also given tending to show that the new fence erected by the defendant was placed on the line between the patents.

The judge held and decided that there was no sufficient evidence of acquiescence by the respective owners of the farms, to establish the old or brush fence as the boundary of the plaintiff's lot ; and that the language of the plaintiff's deed " as the same ought to be established," was an admission that the fence was not on the line. The plaintiff's counsel requested the court to submit the question of acquiescence in the line as the plaintiff claimed it to be, to the jury. The court declined so to do ; and directed a nonsuit in the case, to all which rulings and decisions the plaintiff's counsel in due time and form excepted. There were other rulings and exceptions, but it is supposed that those above given are all which need be here noted.

*R. L. Hand,* for appellants.

*Francis A. Smith,* for respondent.

BOCKES, J. The true line between the farms was intended to be, and was in fact, the dividing line between the Montressor and the Ross patents. The first deed put in evidence by the plaintiff, dated March 16th, 1820, bounded his lot on the east by that line ; and this patent line was ever after, in all the conveyances including the one to the plaintiff in 1845, recognized as the true line. All the deeds declared the patent line to be the east boundary of the plaintiff's farm. There was an implication, too, in the deeds, at least in four out of six, that this true line had not been, at the time they were respectively given, definitely located and settled ; as they declared that the boundary on the east was the patent line " *as the same ought to be established.*" Such line, when found and established, would mark the east boundary of the plaintiff's farm according to all the deeds. There was sufficient evidence in the

case to show presumptively that the new or straight fence, erected by the defendant, was placed on the patent line. Certainly there was no evidence showing that any part of the *locus in quo* was west of that line.

Objection was interposed to the evidence offered to establish the patent line. This evidence was given by persons who had been conversant with the patents and with their recognized boundaries for many years, and knew the line between the patents by tradition, knew of its recognition by those owning lands bounded by such line, and had also traced it by ancient maps purporting to represent it. This evidence was competent within the decision in *Van Rensselaer* v. *Vickery*, 3 Lans. 57, for the purpose for which it was offered. If, therefore, the plaintiff is to be held concluded in his right of recovery to land lying west of the patent line, he was properly nonsuited.

But the plaintiff's counsel insists that there had been an acquiescence in the line marked by the old fence, by the owners of the adjoining farms, and a recognition of it as the line between them, for a sufficient length of time to establish it by practical location. To establish a line by practical location, it must appear that it has been actually located and acquiesced in for a long period of time, generally not less than twenty years (*Reed* v. *Farr*, 35 N. Y. 117), and mutual recognition of the line, and acquiescence in it by the parties is a necessary requisite. *Corning* v. *Troy I. & N. Fac.*, 44 N. Y. 595 ; *Hubbell* v. *McCulloch*, 47 Barb. 287. This brings us to consider the case on the evidence bearing on the question of an alleged practical location of the line. It was fairly to be implied from the language of the deed to the plaintiff, as well as from those to his predecessors in title, that there had been at the times and prior to the delivery of those conveyances respectively, no location of the east line of the plaintiff's farm between the adjoining owners. Those deeds declared the boundary to be the patent line, "as the same ought to be established." This clause was correctly held to be an admission that the line was not then established; that it remained undetermined, and by implication that the old fence was not on the true line. Especially should this be deemed the import of that language when considered in connection with the fact that there was then a crooked, unsubstantial fence on the east of the lot, and in point of fact, distant from the line designated as the true boundary. Thus it appears that the plaintiff entered

under a deed, notifying him of the uncertainty and indefiniteness of the east line, as regarded any other locality than where the patent line "ought to be established." Nor does the oral proof help the plaintiff's case. The old crooked fence had been standing for fifty years or more, and there had been an occupation to it on both sides; which facts unexplained, would raise a presumption of acquiescence. But such presumption might be overcome; and in this case was emphatically overcome, by proof that the fence was erected and maintained for convenience merely, and had not been, and was not at any time, recognized and acquiesced in as the line between the farms, by mutual acts and admissions of the respective owners. It was said in one of the cases above cited (*Hubbell* v. *McCulloch*, 47 Barb. 287), that practical location must be an act of the parties, either express or implied, and it must be mutual, so that both parties shall be equally affected by it. There was in this case no agreement between the adjoining owners to the effect that the old fence should be the line; nor were there mutual admissions by them of that certain and unqualified character as to conclude them from asserting their rights according to the declared intention clearly expressed in the deeds. I am of the opinion that the nonsuit was properly directed.

It does not appear that there was any error in the admission or rejection of evidence calling for a new trial. The judgment must be affirmed, with costs.

*Judgment affirmed.*