ELLEN HERSE and ROBERT HERSE, Respondents, *v.* ANTONIO MAZZA and ANGELO J. QUESTA, Appellants.

*Survey of land and its location by marks upon the ground at the time of the sale thereof — it is conclusive on parties buying adjoining lots as to the boundary line between them — in the absence of estoppel a practical location requires an acquiescence of twenty years.*

Where the owner of two adjoining lots, laid out upon a map which rendered it difficult to ascertain the precise situation of the dividing lines between the lots, after procuring the dividing line to be located by a surveyor and having the boundary as so located plainly marked upon the ground, conveys the respective lots to two different parties, who acquiesce in such survey and whose possession for some ten years conforms thereto, the boundary line as thus located and marked is conclusive, even if erroneous, upon the grantees of the lots and their successors in title.

This does not rest upon any presumption of fact that the parties agreed upon any different boundary than the deed boundary, but upon the conclusive presumption that they found and correctly located the deed boundary.

*Semble,* that in the absence of estoppel, in order to establish by practical location a boundary line, other than the boundary line as given in the deed of the premises, there must be an acquiescence of not less than twenty years.

APPEAL by the defendants, Antonio Mazza and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Cattaraugus on the 23d day of December, 1903, upon the report of a referee.

*J. H. Waring* and *W. V. Smith,* for the appellants.

*Fred L. Eaton,* for the respondent.

Judgment affirmed, with costs, on opinion of THRASHER, referee.

All concurred.

The following is the opinion of Hon. W. S. THRASHER, referee:

THRASHER, Referee:

This action is ejectment to recover of the defendants a strip of land one foot and six inches wide, on a portion of which stands a brick building erected by defendants' immediate grantor. The whole question depends upon the location of the boundary line between the lands of the defendants and the adjoining lands of the plaintiffs, who all take from a common grantor.

All the conveyances in both chains of title described the lands simply by lots in block 83, according to a map made by T. J. Gosseline, Esq. It appears that the map referred to was made by Gosseline in 1835, and represents the survey by him of a large tract of land laid out as village property for the proprietors into streets, blocks and lots, and which streets were named on the map and the blocks and lots numbered. According to such map the lands of the parties hereto were embraced in what was block 83 on the map, and are lots 45, 46 and 47 in said block, the plaintiffs taking title of lots 45 and 46, and the defendants having acquired title to lot 47. The disputed boundary is the line between lots 46 and 47. The map in question gives no distances as to the width or length of lots, but the map purports to be drawn to a scale. It is not, however, practicable to ascertain by measurements on the map these widths or lengths with sufficient accuracy to permit precise location of lines on the ground, and recourse is had, and it had been the practice generally of surveyors to go, to what is called a block book or books (not mentioned in the conveyances) to ascertain such measurements.

It does not appear when such book was made or by whose authority, but it has been used with reference to lines on the map for many years, generally by parties seeking to locate map lines of lots, blocks and streets. Even with its aid much difficulty is experienced and has always existed in locating lines generally in accordance with such map and embraced within such survey, and much trouble and litigation has arisen over such locations, as the land has been improved and built upon, and as the tract surveyed has developed from a wilderness into a city.

The streets of the city have finally become located and marked whether as originally located or not. It has become customary to measure, in locating lots, from the street boundaries as now located. Such locations made now provoke much litigation, due to shortages and overplus in the blocks between streets.

In the present case a measurement from Third street, as now located, giving the width of lots now contained in the block book, will leave the disputed boundary west of the disputed land by five inches, and west of the line claimed by the plaintiffs by two feet, and leaving the disputed land wholly within the defendants' title. But Third street was located as at present quite recently and it does not appear with what degree of accuracy it was made to conform to the map lines.

It does, however, appear that, before the conveyances on either side were made by the common grantor, and while the defendants' grantor was in possession, but preceding the date of the conveyance, and at about the time when the plaintiff Ellen Herse purchased under a contract for a conveyance, one of the common grantors caused the now disputed line to be located by a surveyor and marked the boundary as so located. Lay, then in possession of lot 47, the title to which she subsequently acquired, and Herse, in possession of lot 46, acquiesced in such boundary so ascertained, and Lay moved back her building so that its west side lay upon such boundary then ascertained, and the possession of each conformed to such boundary for about ten years and down to 1896. At that period, the original building which had been moved back to such ascertained boundary having burned, Glasser, the then owner, erected a new substantial brick building on the site of the building burned, except that he extended its west wall to the west and

beyond the location of the boundary made ten years previously, and thereby took possession of the disputed land. He did this with the knowledge of the plaintiffs' claim of ownership and against their protest, and he has since with his grantees, these defendants, held possession, claiming the boundary to be eighteen inches west of the location previously made and acquiesced in. The defendants also purchased with knowledge of the precise claim of the plaintiffs.

This location as made upon the ground, and the acquiescence following are conclusive upon the defendants, and this boundary must remain as then located, even if it was located erroneously, as might subsequently be determined. (*Reed* v. *Farr*, 35 N. Y. 113; *Baldwin* v. *Brown*, 16 id. 359; *Smith* v. *Faulkner*, 48 Hun, 188; *Sherman* v. *Kane*, 86 N. Y. 57.)

The actual location then made and with reference to which the parties contracted and took their titles on either side will control, and is conclusive upon the question of the true location. (*Van Wyck* v. *Wright*, 18 Wend. 158.) This does not rest upon any presumption of fact that the parties have agreed upon a different boundary than the deed boundary, but upon the conclusive presumption that they found and correctly located the deed boundary, and that they subsequently took title on either side under their deeds which described their lands to that boundary, and that such boundary line, open, notorious and plainly marked upon the ground, is the boundary referred to in their respective deeds. Clearly it was the intention of both parties taking their title from Chamberlain to take to the boundary which he fixed and marked; that was the line referred to in their contracts for their conveyances, and the one which all parties understood to be the boundary between the lots. And it is a principle of most common application in the determination of boundaries, as well as in the construction of contracts, that the intention and understanding of the parties at the time of the contract or conveyance must govern when ascertained. And the rule as stated in *Van Wyck* v. *Wright* (*supra*), that a conveyance is to be construed in reference to its distinct, visible and locative calls as appearing upon the ground in preference to quantity, course, map or anything else, has been uniformly followed and applied. (*Singer* v. *Mayor*, 47 App. Div. 44; *Bell* v. *Hayes*, 60 id. 382; *Burke* v. *Henderson*, 54 id. 157; *Barrows* v. *Webster*, 70 Hun, 597; *Seneca Nation*

*of Indians* v. *Hugaboom,* 30 N. Y. St. Repr. 586; affd., 132 N. Y. 492.)

It is insisted by the defendants that, in order to establish a line by practical location, there must be long acquiescence, not less than twenty years; and this would be so in order to establish a line other than the deed line, so as to make title in the party whose deed did not cover the disputed land, unless there was the element of estoppel in the case, but that rule will not apply where the location is fixed and the boundary marked upon the ground prior to the conveyance, and in reference to which boundary the conveyances have been made. The line established in that manner is presumably the line mentioned in the deed and no lapse of time is necessary to establish such location. The location does not rest upon acquiescence in an erroneous boundary but upon the fact that the true location was made and the conveyance made in reference to it. From the contract with the plaintiff in 1885, and the deed to defendants' grantors in 1887, together with the proof of prior location, it appears that it was the intention of the Chamberlains to convey to the plaintiffs lots 45 and 46 and to the defendants' grantors lot 47, as such lots then were marked out upon the ground, and at that time all parties understood and could see where this boundary lay.

Applying these principles here, the plaintiffs have shown title to the eighteen inches of land encroached upon by the defendants and are entitled to recover.

Findings and judgment accordingly.