### TAUB v. SPECTOR et al.

(Supreme Court, Appellate Division, First Department. February 7, 1908.)

VENDOR AND PURCHASER—MARKETABLE TITLE.

> The boundary lines of a city lot were located as early as 1822, and have since been acquiesced in by the owners of the adjacent lots on both sides. For over 50 years the owners and their predecessors in title have been in actual peaceable possession of the entire premises, and during that time nobody else has claimed any interest to any part thereof, nor, to the knowledge of the owners or of a contract purchaser, is there any person who can have any claim of title against the owners. *Held*, that the owners have a good and marketable title to the premises, though a deed in 1822 erroneously described the lot as one foot narrower than it really was, and the mistake was repeated in subsequent conveyances.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 245, 246.]

Submission of controversy, under Code Civ. Proc. § 1279, between Meyer Taub and Max Spector and others. Judgment for defendants.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Julius H. Reiter, for plaintiff.
Emanual Van Dernoot, for defendants.

McLAUGHLIN, J. This controversy is submitted upon an agreed statement of facts under section 1279 of the Code of Civil Procedure. The defendants are the owners of certain real estate in the city of New York, known as "No. 111 Hester Street." which they contracted to convey to the plaintiff by full-covenant warranty deed. The lot contracted to be conveyed is bounded and described in the contract as follows:

"Beginning at a point on the northerly side of Hester street, distant forty-two (42) feet seven (7) inches westerly from the corner formed by the intersection of the northerly side of Hester street and the westerly side of Eldridge street; running thence northerly and parallel with Eldridge street fifty (50) feet; thence running westerly and parallel with Hester street twenty-four (24) feet five (5) inches; thence running southerly fifty (50) feet to the northerly side of Hester street; and thence running easterly along the said northerly side of Hester street twenty-four (24) feet seven (7) inches to the point or place of beginning—be said several distances and dimensions more or less."

At the time fixed for the closing of the contract the plaintiff refused to accept the deed tendered, on the ground that the defendants could not convey a good title, since they had a record title to a lot only 23 feet 7 inches wide, front and rear, while the contract and deed tendered described the lot as 24 feet 7 inches wide in front and 24 feet 5

inches wide in the rear. The defendants claim to have acquired title to this strip of land by adverse possession, and the question presented for our determination is:

"Were the defendants able to convey a good and marketable title to the premises in question, pursuant to the contract entered into between the parties hereto on the 5th of April, 1907?"

From the submission it appears that on May 1, 1822, one Miller became possessed of the premises in fee, the deed conveying to him "all that certain messuage or dwelling house and lot, piece, or parcel of ground" bounded and described as in the contract between the parties to this submission, except that the width of the lot was given as 23 feet 7 inches, front and rear. The building described in this deed as a dwelling house was actually 24 feet 7 inches in front and 24 feet 5 inches wide in the rear, and it occupied substantially the entire lot. It still stands upon the lot in the same position that it did then; neither the front, nor the rear, nor the side walls having been, in the meantime, changed in any respect. By mesne conveyances, each describing the premises as 23 feet 7 inches wide, title became vested in 1893 in one Baraginsky. He conveyed the premises in 1905 by deed of conveyance describing the premises exactly as they are described in the contract between the parties to this submission and in the deed tendered thereunder by the defendants; the same description being used in the subsequent conveyances by which title became vested in the defendants. A survey shows the frontage of the lot on Hester street to be 24 feet 7 inches; the easterly line being 42 feet 7 inches from Eldridge street. The westerly line of the premises adjoining on the east has been located precisely where it is now in all of the deeds of conveyance since 1822. The easterly line of the premises adjoining on the west has been located precisely where it is now in all of the deeds of conveyance since 1836, as 133 feet 4 inches from Forsyth street, the street on the west of the block. This gives the premises in question a width of 24 feet 7 inches in front and at least 24 feet 5 inches in the rear. It is evident from these facts that the conveyance to Miller in 1822 erroneously described the lot as "23" feet 7 inches wide, instead of "24" feet 7 inches, and the same mistake continued to be made in the subsequent conveyances down to 1905. The mistake, however, is of no importance, because the fact is established that the boundary lines of the lot were actually located and fixed as early as 1822, and they have since been acquiesced in by the owners of the adjacent lots on both sides. The boundary lines as thus fixed and established during all this time gave the lot in question a width of 24 feet 7 inches in front and at least 24 feet 5 inches in the rear.

In Reed v. Farr, 35 N. Y. 113, it was held that the practical location of a boundary line and an acquiescence of the parties therein for a period of more than 20 years is conclusive of the location of the boundary line, and that such location and acquiescence are deemed conclusive on the ground that they constitute evidence of the correct location of so high a nature as to admit of no contradiction. There the line of separation between the two lots was made by the erection of a fence, and there was proof that the owners and occupants of the land

had respectively occupied it up to the fence as their respective boundary lines for over 20 years. In Baldwin v. Brown, 16 N. Y. 359, which is referred to and cited with approval in Reed v. Farr, supra, it was held that practical location and long acquiescence in a boundary line are conclusive, because they are proof that the location is correct, and to such an extent as to preclude evidence to the contrary.

In addition to this, the submission shows that for over 50 years the defendants and their predecessors in title have been in actual peaceable occupation and possession of the entire premises, with the building thereon, as described in the contract, and that no person, during that time, has made claim of having any interest in the premises or the strip of land in dispute; nor, to the knowledge of the parties, is there any person in existence who has, or can have, any claim of title thereto as against the defendants. Under such facts and circumstances, I am of the opinion that the defendants have a good and marketable title to the premises in question and are able to convey the same to the plaintiff. Wentworth v. Braun, 78 App. Div. 634, 79 N. Y. Supp. 489, affirmed 175 N. Y. 515, 67 N. E. 1091; Weil v. Radley, 31 App. Div. 25, 52 N. Y. Supp. 398, affirmed 163 N. Y. 582, 57 N. E. 1128; Katz v. Kaiser, 154 N. Y. 294, 48 N. E. 532; Meyer v. Boyd, 51 Hun, 291, 4 N. Y. Supp. 328.

It follows, therefore, that the defendants are entitled to a judgment directing the plaintiff to perform said agreement and pay to the defendants the sum of $9,750, with interest thereon from the 14th day of May, 1907, on receiving a deed of conveyance of the lot in question as provided in the contract, with costs. All concur.