MYER v. IDLEWOOD ASS'N.

(Supreme Court, Equity Term, Erie County. January, 1914.)

1. VENDOR AND PURCHASER (§ 228*)—NOTICE OF EQUITY—EFFECT.

A grantee with notice of the claim of one owning and occupying a gore of land between the boundary marked by a fence and the line described by his deed must be deemed to have taken title subject to the rights and equities of such owner.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 495–501; Dec. Dig. § 228.*]

2. REFORMATION OF INSTRUMENTS (§ 13*)—MISTAKE—DEED.

A deed intended to convey premises bounded by a blazed and monumented line, but which by mutual mistake described such line as within and wholly on the grantee's land, should be reformed so as to express and carry out the true agreement and intention of the parties.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 42–60; Dec. Dig. § 13.*]

3. REFORMATION OF INSTRUMENTS (§ 18*)—MISTAKE—EQUITABLE RELIEF.

Where parties, intending to reduce a parol agreement to writing, make a contract different from that intended, because of a misunderstanding of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the terms used, equity will relieve by reforming the instrument and compelling them to perform the agreement as they made it; and it is immaterial whether such mistake is called a mistake of law or of fact.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 72, 73; Dec. Dig. § 18.*]

4. BOUNDARIES (§ 49*)—PRACTICAL LOCATION—EFFECT.

Practical location of a boundary line with a continued and undisturbed occupation thereto by the grantee for more than 20 years is conclusive on the parties and their successors in title, even though the boundary line so located is erroneous.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 243–248; Dec. Dig. § 49.*]

Action to quiet title and for reformation of a deed by Gertrude W. Myer against the Idlewood Association. Findings for plaintiff.

Charles P. Norton, of Buffalo, for plaintiff.
George Clinton, of Buffalo, for defendant.

WHEELER, J. This action, in substance, is one to quiet title to a parcel of land in dispute between the parties to this action. The essential and controlling facts are unquestioned.

The evidence shows that prior to January, 1867, one Marion Stewart was the owner of a farm on the shore of Lake Erie, in the town of Hamburg, N. Y., commonly known as the "Morsman Farm." Gen. Albert J. Myer entered into negotiations with her for the purchase of the northerly part of this farm, consisting of about 15 acres of land. These negotiations appear to have been conducted principally, if not wholly, through Mrs. Stewart's husband, Elliott Stewart. Stewart and Gen. Myer met on the farm in company with one Peter Barker a local surveyor, and proceeded to fix the division line between the property to be purchased by Myer and that retained by Mrs. Stewart. After running two lines, both of which, for reasons stated, were unsatisfactory to the parties, a third line was run by the surveyor midway between the two, which was assented to by both Myer and Stewart. The course of this line as thus agreed upon ran from an established point to the shore of the lake, and was marked by blazes made upon trees standing upon the line thus agreed upon. The surveyor was then instructed to prepare a written description of the property for insertion in the deed to be given. Barker prepared a description, and it was given to the attorney, who incorporated it into the deed subsequently executed by Mrs. Stewart to Myer. This deed bears date January 9, 1867. In this description the division line between the two properties is given as running from a certain corner north 55 degrees and 40 minutes west, to the shore of Lake Erie.

This course, as matter of fact, was wrong, as it did not correspond with the blazed line agreed upon by the parties. If the course written in the deed were followed, it would diverge to the north from the blazed line, varying in the degree of divergence according as to whether the line was run with reference to the true or magnetic meridian. In any event, between the agreed blazed line and the line given by the course written in the description in the deed there is a gore of land

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

over which this litigation arises. Each party to this action claims to be the owner of this gore. The plaintiff contends that as successor to the title of her father, Gen. Myer, the true division line between her property and that of the defendant is the blazed line originally agreed on by her father and Stewart. The defendant, on the other hand, contends that the description in the deed must prevail, and that it is entitled to take up to the record line of the deed.

As against the course given in the deed, the plaintiff contends that it was inserted by the mutual mistake of the parties, and that she is entitled to have the deed reformed so as to express the real agreement and intent of the parties to it, and, also, that there having been a practical location of the division line, acquiesced in for more than 20 years, the line so established cannot now be questioned by this defendant.

A statement of these respective contentions of the parties necessitates the recital of certain other facts established by the evidence, and over which there appears to be no substantial dispute.

After the deed from Mrs. Stewart to Gen. Myer was given, and in June, 1873, Gen. Myer and Mrs. Stewart built a division fence between their properties; each sharing in the expense of the construction. This fence was built on the blazed line above referred to. The fence stood on this line for many years. It was there in 1883, when the Stewarts conveyed the remainder of the Morsman farm to the Idlewood Association. In time the posts rotted, and the original fence was replaced by a wire fence along the same line. These fences remained in this condition until a few years prior to the commencement of this action. The land north of this fence was for years used for pasturage by Gen. Myer and tenants under him.

I am unable to discover in the evidence given on the trial anything tending to show that the Stewarts or the Idlewood Association ever claimed or gave notice to Gen. Myer or to his successors in interest, until within a short time before the commencement of this action, that these fences were not on the division line between their respective properties. In time, it is true, the fence became dilapidated, and portions of it fell to the ground; but that did not change the general situation. The defendant's counsel lays stress upon the fact that, after the Idlewood Association acquired its property by purchase from the Stewarts, members of the association owning cottages on its grounds broke down the wire fence near the banks of Eighteen Mile creek, and were accustomed to pass through onto the Myer property. This passage through the fence does not appear, however, to have been forced under any claim that the fence was not properly placed, but simply to enable persons wishing to stroll along the creek for their pleasure to do so, and this concededly on the Myer property.

On the other hand, it appears that the general dining hall of the association was built near this division fence. It was destroyed by fire on two occasions. The fire so damaged certain trees just north of the fence that they were likely to fall, and the association asked permission of the Myers to go upon the property and cut them down. The permission was given, and the trees removed. This action on the part of the association was a recognition of the rights and title of the

Myers, and quite inconsistent with the claim now made that the mere breaking through of the wire fence under the circumstances was done by virtue of any claim of strict right to do so.

As has been previously stated in this opinion, the Stewarts, in the year 1883, sold and conveyed the remainder of the Morsman farm, not previously sold to Gen. Myer, to the Idlewood Association. To be more accurate, the Stewarts conveyed to A. J. Riegel, who in turn, and three days thereafter, conveyed to the association. Riegel, however, in purchasing the property, in fact acted for the association, and was its president. In the deed of conveyance from the Stewarts, the property conveyed was bounded "on the north by land owned by the late A. J. Myer." At the time of making this conveyance, Riegel and his associates were informed by the Stewarts that they only owned up to the division fence in question. In addition to the statement so made to the purchasers, there existed the fence in question, and the open and notorious occupation of the land north of it by the Myer family. So that the defendant had not only constructive but actual notice that the Myer family claimed to own down to the fence in question.

[1] The association therefore is in no position to contend that it took its deed in ignorance of the claims of those holding and occupying under the deed to Gen. Myer. It had ample and full notice, and must be deemed to have taken such title as it acquired subject to the rights and equities of the plaintiff and her predecessors in title. The plaintiff has succeeded to all the title and rights her father had, under a partition of his estate, and the defendant, having asserted ownership to the gore of land in question, brings this action to quiet her title to the same, and in connection therewith to reform the erroneous description contained in the deed from the Stewarts to her father, Gen. Albert J. Myer.

Inasmuch as the Idlewood Association has succeeded to all the rights of the Stewarts and as no one appears to be in any way interested in the property except the parties to this action, we see no reason why this court should not render such a decision and judgment as the circumstances and equities of the case justify.

[2] We are of the opinion the plaintiff is entitled to the relief demanded. We can reach no conclusion other than that the description drawn by the surveyor, Barker, and copied into the deed to Gen. Myer, was an erroneous description; that it did not properly describe the land intended to be sold and conveyed; that when said deed was executed the parties to it supposed and believed that it conveyed the premises in question bounded on the south by the blazed and monumented line above referred to; that the mistake was mutual on the part of the grantors and grantee therein; and that, as between the parties thereto and those claiming under and through them, the deed should be reformed so as to express and carry out the true agreement and intent of the parties.

[3] It is a well-recognized rule of law and equity that where parties intending to reduce a parol agreement to writing, because they are ignorant of the force of language and misunderstand the meaning of the terms used, make a contract different from that designed, equity

will grant relief by reforming the instrument and compelling the parties to perform the agreement as they made it, and it matters not whether such mistake be called one of law or of fact. Pitcher v. Hennessey, 48 N. Y. 415; Bush v. Hicks, 60 N. Y. 298; Bacot v. Fessenden, 139 App. Div. 647, 124 N. Y. Supp. 370; Le Gendre v. Scottish U. & N. Ins. Co., 95 App. Div. 565, 88 N. Y. Supp. 1012.

[4] There is still another principle of law which entitles the plaintiff to relief in the nature of a decree quieting the title to the strip of land in dispute. It is the doctrine touching the effect of the practical location of a boundary line. The evidence fully justifies the finding that the parties to the deed from Stewart to Myer established and agreed upon the division line, and that there' had been a continuous and undisturbed occupation by the grantee and his successors in title up to that time for more than 20 years. Under such circumstances, the division line thus located and marked, even if erroneous, is conclusive on the parties and their successors in title. Herse v. Mazza, 100 App. Div. 59, 91 N. Y. Supp. 778; Reed v. Farr, 35 N. Y. 113; Baldwin v. Brown, 16 N. Y. 359; Goodhue v. Cameron, 142 App. Div. 478, 127 N. Y. Supp. 120; Taub v. Spector, 124 App. Div. 158, 108 N. Y. Supp. 723; Smith v. Faulkner, 48 Hun, 188.

Let findings be drawn in accordance with these views.

So ordered.