John LaFarge was the common source of title; the plaintiff's conveyance was the earliest, and the *Page 396 
defendant's land, conveyed by a later deed from LaFarge, was, by the terms of that deed, bounded on the southerly side by the northerly line of the land which had been conveyed to the plaintiff. The plaintiff was, therefore, entitled to all the land embraced in the description contained in his deed, and the defendant was entitled to all the land lying immediately north of the plaintiff's northerly line. The westerly terminus of that line is not in dispute — the parties agreeing upon the corner at that terminus. From that point easterly, for a considerable distance, the line between the two parcels is not in controversy. But the parties differ as to the true position of the northeast corner of the plaintiff's land, which is also the southeast corner of the land of the defendant — the plaintiff claiming it to be some fifty links northerly from the point at which the defendant locates it. If the plaintiff is right in his pretension, the place at which the defendant cut down the fence was on the boundary line, and when he passed through the opening he committed a trespass upon the plaintiff's land. On the contrary, if the defendant is right as to the position of the corner, the fence was on his land, and he had a right to break it down and enter through it. The location of that corner was, therefore, the vital question in the case. By the description contained in the plaintiff's deed, it was to be ten chains and seventy-five links from the north-easterly corner of Joseph Wager's lot (which lies next south of the plaintiff's lot), on a course fifty-five degrees east from the last-mentioned corner. There was no question between the parties as to the position of that corner, and the evidence of the surveyors and the two chain-bearers is positive, and it is uncontradicted by any other witness, that the place claimed by the defendant as the disputed corner, is at the precise distance from Wager's corner which is specified in the plaintiff's deed, and substantially in the course mentioned in that conveyance. This evidence establishes the case of the defendant beyond controversy, unless he is *Page 397 
concluded by a different location of that corner by force of a valid agreement of the parties — the evidence of which is to the following effect: On the 20th of October, preceding the trial, the defendant applied to Mr. Ingerson, a surveyor, to run the line between him and the plaintiff. In order to ascertain the position of the corner in question, he commenced at the northeast corner of the defendant's land, the boundaries of which were known from the description in his deed, and ran on the course established for the eastern boundary of all the lots towards Wager's corner, the required distance, and put up a temporary stake. He then ran across the east end of the plaintiff's lot to Wager's corner, but the chain bearers said that the line was fifty links short of what the deed called for. The surveyor called the attention of the plaintiff and defendant, who were present to the mistake, and set the stakes as he believed to be right, and ran and staked the line from the corner they fixed to the admitted western terminus of the division line. According to the testimony of the surveyor, both the plaintiff and defendant then said: "Now we will have a good fence." According to the plaintiff's witness, the defendant requested the plaintiff to put his fence on the line thus run, and said he now proposed to have a good fence. It was shown that shortly afterwards the plaintiff constructed a rude fence of logs and brush for about twenty rods, running westerly from this corner to where it joined an existing fence. Whether this was before or after the alleged discovery of the mistake does not clearly appear. Three or four weeks after the alleged agreement upon and settling of the corner, the same surveyor and chain-bearers re-surveyed the east end of the lots, and ascertained, as they testified, that the chain-bearers had, on the former occasion, made a mistake by omitting one chain in the distance they had run across the east end of the defendant's land. There was some evidence of an original location of the line between the plaintiff's and defendant's land as the defendant claimed it to be, *Page 398 
and also that the plaintiff, or his father, who was present and acting for him, knew of the mistake, or of some mistake, at the time of the alleged agreement. There was also some complication respecting the eastern line of the lots, not material, however, to the present question. The evidence tending to show a mistake in the measurement, was objected to by the plaintiff's counsel, but the objection was overruled; and the judge finally charged that if such a mistake as alleged had been made, and the location of the corner was assented to in ignorance of the mistake, it was not too late to correct it; and that if, on account of such mistake, the fence on which the trespass was committed was placed on the defendant's land, the plaintiff could not recover. The exception to this instruction presents the only question in the case.
I am of opinion that it was entirely correct. There was nothing in the nature of a submission to the surveyor to fix upon the corner, if that could have been effectual. The defendant procured Mr. Ingerson to run the line, apparently for his own satisfaction. It was not the joint act of the parties, but of the defendant alone. From what was then done, he supposed the corner which was set was the true one, and he assented that the fence should be placed on the line thus indicated; but a subsequent survey, made within a very brief period, showed that a mistake had occurred on the first occasion, and he then insisted upon what is shown to have been the true line, according to the effect of the several conveyances. If by force of these circumstances the plaintiff had acquired title to the piece of ground lying between the two lines, then, notwithstanding the statute of frauds, mere words will change the ownership of real estate, under circumstances which would not affect any other legal rights. But if the plaintiff's case were strong enough to establish an agreement in fact upon the line running from the corner first fixed upon by Ingerson, we have an express decision of *Page 399 
this court that it would not change the title or estop the defendant. (Baldwin v. Brown, 16 N.Y. 359.) In that case, the boundary line which was allowed to prevail over the parol agreement, by which a different one was sought to be established, was a line fixed only by long acquiescence, against what would otherwise have been the legal rights of the parties. This boundary, by user and acquiescence, was certainly not stronger than one established by the terms and effect of the title deeds under which the parties held. In that case the agreement to change the line so as to make it a straight one, was far more satisfactorily proved than the alleged agreement in the present case. I am of the opinion that we cannot, upon the principle of that case, attribute any legal effect to what was said by the parties at the time the surveyor fixed upon the erroneous corner. I am of opinion, moreover, that the mistake in the measurement would have invalidated the agreement if it had been otherwise essential.
There is nothing in the case which will support the allegation of an estoppel in pais. If the plaintiff actually built his fence before the mistake was discovered, he would not thereby have acquired title by force of an estoppel; but, as I have said, the order of these events is not satisfactorily shown by the case. I am for affirming the judgment.
All the other judges concurring, judgment affirmed. *Page 400