LEVI R. SMITH, APPELLANT, *v.* EDWIN D. FAULKNER,
RESPONDENT.

*Division line — an acquiescence by the parties for more than twenty years is conclusive
as to its location — to invalidate a deed for champerty the person in possession must
claim under some specific adverse title*

In 1833 Silas Purdy conveyed two parcels of a farm, then owned by him, to his
two daughters, Patience and Almira, intending to bound the parcel conveyed to
Patience on the north, and the parcel conveyed to Almira on the south, by a
common division line.   By some error in the survey or description such north
and south lines did not in fact coincide.   Upon the trial of this action of eject-
ment, brought by the plaintiff, the grantee of Patience, against the defendant,
who claimed under Almira, it was proved that by practical location and an
acquiescence of nearly fifty years, before the defendant acquired his title, the
north line of the strip in question had been established as the true division
line between the two parcels of land, and that for nearly thirty years before the
defendant acquired title a fence had been built by the owners substantially on
the line so established, and that the two parcels were occupied by their respective
owners up to that fence, on either side, until February, 1883, when the defendant
took possession of the strip in question, claiming to be entitled to do so under a
deed received in 1880, which bounded him on the south " by the lands of Patience
Smith," who was then still the owner and in the actual occupation of the parcel
on the south up to the line established in 1834.

On April 7, 1884, Patience conveyed to the plaintiff, by a description which bounded
him on the north by a line commencing on the east at a monument which
marked the east end of the division line, established in 1834, and ran " thence
west along the north line of lands deeded by Silas Purdy and wife to Patience
Smith," the deed reciting that it was intended to convey the land deeded by Silas
to Patience on a day stated, and " since that time occupied by her."

*Held,* that a decision made by the referee, before whom the action was tried,
to the effect that the deed to the plaintiff was, so far as it purported to convey
the strip of land in question, void for champerty, was erroneous.

That the plaintiff acquired by the deed from Patience a perfect title up to the
line established in 1834.

That the defendant took no title to land south of that line, and that his acts in
taking possession of any portion of it were acts of trespass, and his possession
was without color of title.

That the defendant's title was not adverse to that of Patience, within the language
of the statute of champerty, as it was, by the terms of his deed, limited by her
title, the description in his deed stopping at the north line of her land.

Under the statute of limitations the adverse holding need only be under a *claim*
of title, but under the statute of champerty the possession must be under a *title*
adverse to that of the grantor in the deed.

APPEAL from a judgment dismissing the complaint, entered in Chautauqua county upon the report of a referee.

*A. C. Picard*, for the appellant.

*Sessions & Palmer*, for the respondent.

DWIGHT, J. :

The action was ejectment for the strip of land included between two lines claimed, respectively, by adjoining owners, as the true boundary between their lands. The two parcels were first conveyed, in severance, by Silas Purdy, in 1833, to his two daughters Patience Smith and Almira See, intending to bound them, the former on the north, the latter on the south, by a common division line. By some error in the survey or description the north and south lines, respectively, did not in fact coincide. Patience Smith's deed of 1833 was lost or destroyed, and its place was supplied by a deed of December 18, 1857. The plaintiff is the grantee of Patience Smith, the defendant, by mesne conveyances, of Almira See.

The undisputed evidence showed that by practical location and an acquiesence of nearly fifty years before the defendant acquired his title, the north line of the strip in question had been established as the true division line between the two parcels of land; that at the time of its location in 1834, that line was marked by a permanent monument at its east end, and by marked trees along its extent to the west; that nearly thirty years before the defendant acquired his title, a fence was built, by the owners, at that time, substantially on the line so established, and that the two parcels were occupied by their respective owners up to that fence, on either side, until February, 1883, when the defendant assumed to take possession of the strip in question. He caused the south line of the strip to be run and took possession up to the new line. His deed which he received in 1880, bounded him on the south " by the lands of Patience Smith," who was still the owner and in the actual occupation of the parcel on the south, and up to the line established in 1834.

April 7, 1884, Patience Smith conveyed to the plaintiff by a discription which bounded him on the north by a line commencing on the east, at the monument which marked the east end of the division

line established in 1834, and ran "thence west along the north line of lands deeded by Silas Purdy and wife to Patience Smith." The deed also contained this further description "this grant is intended to convey the land deeded by Silas Purdy and wife, to Patience Smith by deed dated December 18, 1857, *and since that time occupied by her.*" The plaintiff commenced this action April 15, 1884. The referee found that the deed from Patience Smith to the plaintiff did not include the strip of land in dispute; that at the date of that deed Patience Smith was not in possession of the strip and had not been since February 1883; but that from the last mentioned date the defendant had been in possession, claiming adversely to Patience Smith, under the title derived by him from the deed of his grantor; and he found, as a conclusion of law, that the plaintiff was not entitled to recover the possession of the strip of land in question, and dismissed his complaint.

The decision was evidently based upon the assumption that the plaintiff's deed, so far as it purported to convey the strip of land in question, was void for champerty; in which respect the learned referee was clearly in error. Patience Smith's title was perfect up to the line established in 1834, which was the north line of the strip. The rule has become elementary that the practical location of a boundary line and an acquiescence therein by the parties for more than twenty years, is conclusive of the location of the line. In *Reed* v. *Farr* (35 N. Y., 113) and *Baldwin* v. *Brown* (16 N. Y., 359), it was held that evidence (so furnished) of the *correct location* of the line, is of so high a character as to admit of no contradiction. The line so established in this case was, therefore, against all other evidence whatsoever, by survey or otherwise, "the north line of the land deeded by Silas Purdy and wife to Patience Smith," which was the definition of the plaintiff's north line in the deed from Patience Smith to him. Moreover, on the day when the defendant took his deed, Patience Smith was in actual possession of the strip of land in question, not only (as the referee finds) "claiming to own the same," but under an indisputable title, of course adverse to that of the defendant's grantor. If, therefore, the defendant's deed had assumed to convey to him any part of the strip in question, it would have been *pro tanto* void; but it did not assume to do so, it bounded

the land conveyed to him "on the south by lands of Patience Smith." The lands of Patience Smith, as we have seen, were bounded on the north by the north line of the strip, hence by his deed the defendant took no title to land south of that line, his acts of possession of any portion of such land were acts of trespass, and his possession was without color of title. The language of the statute of champerty is, "every grant of lands shall be absolutely void if, at the time of the delivery thereof, such land shall be in the actual possession of a person claiming *under a title* adverse to the grantor." The defendant's title was not adverse to that of Patience Smith, it was, by the terms of his deed, limited by her title, because the description in his deed stopped at the north line of her land. His *claim* was adverse to her's, but not the title under which he claimed.

Under the statute of limitations the adverse holding which will ripen into a title in twenty years, need only be under a *claim* of title, but under the statute of champerty the possession of one day or one year, or of any other period short of twenty years, which will render void a deed of the same lands to any other person, must be under a *title* or color of title adverse to that of the grantor in such deed. This distinction is clearly made by SELDEN, J., in the case of *Crary* v. *Goodman* (22 N. Y,. 170). In *Dawley* v. *Brown* (79 id., 390), the court, by RAPALLO, J., say: "He (the person in possession) must claim under some specific title. What the title is must be disclosed that the court may see that it is adverse to that of the grantor in the deed assailed." In the case of the *Crooked Lake Navigation Company* v. *The Keuka Navigation Company* (37 Hun, 12), this court said: "It is not necessary that such title be valid, but the color of title must *purport to convey* a freehold estate and adverse to that under which the plaintiff asserts its right to the possession. Here the title, under which the defendant claims, is disclosed, and the court sees that it is *not* adverse to that of Patience Smith, the grantor in the deed to the plaintiff. His deed, which constitues his color of title, does not purport to convey an estate adverse to her's. There is, therefore, no ground for holding that the deed of Patience Smith, so far as it purported to convey to plaintiff the strip of land in question, was void for champerty, nor for the finding that that deed "did not include the strip of land in dispute." On the con-

trary, by the undisputed evidence on the trial under review, the plaintiff took good title to the premises described in the complaint and was entitled to recover the possession from the defendant.

The judgment must be reversed.

All concurred.

Judgment reversed and new trial ordered before another referee, costs to abide event.