(13 App. Div. 155.)

### NOLAN v. HARNED et al.

(Supreme Court, Appellate Division, Second Department.  January 29, 1897.)

VENDOR AND PURCHASER—ENCROACHMENT OF BUILDINGS.

A vendor of a house and lot, who agrees to procure for the purchaser a conveyance of adjoining land, on which, according to a survey, the house encroaches, thereby waives the claim that the adjoining owner is estopped, by acquiescence in a boundary line, to assert that there is an encroachment, and therefore the vendor cannot refuse to procure such conveyance on that ground. Goodrich, P. J., dissenting.

Appeal from special term, Kings county.

Action by Mary E. Nolan against Obadiah Harned and another to rescind a contract.  From a judgment entered on a decision of the trial judge in favor of plaintiff, defendant Obadiah Harned appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Rufus L. Scott, for appellant.

Eustace Conway, for respondent.

CULLEN, J.  On the 29th day of April, 1895, the plaintiff was the owner of two houses and lots in the city of Brooklyn, known as "755 and 757 Dean street."  On that day she and her husband entered into an agreement with the defendant whereby the plaintiff was to convey said houses and lots, and another house and lot, to the defendant, who was to pay for them by conveying to the plaintiff a farm at Huntington, and was to loan to her upon the farm the sum of $5,000.  The details of this contract are immaterial.  The only description in the contract of the property on Dean street is:  "The two houses known as '755 and 757 Dean street,' * * * said lots being forty-nine feet ten inches by one hundred and ten feet." When the title came to be closed the plaintiff presented a deed conveying the lots on Dean street by metes and bounds as follows:

"Beginning at a point on the northerly side of Dean street, distant three hundred and twenty-five feet easterly from the corner formed by the intersection of the easterly line of Underhill avenue with the northerly line of Dean street; running thence northerly, parallel with Underhill avenue, one hundred and ten feet; thence easterly, and parallel with Dean street, forty-nine feet and ten inches; thence southerly, again parallel with Underhill avenue, one hundred and ten feet, to the northerly line of Dean street; and thence westerly, along the northerly line of Dean street, forty-nine feet and ten inches to the place of beginning."

The defendant produced a survey made by one Bartlett, a city surveyor, showing that the westerly house encroached on the lot to the

west four inches in front and six inches in rear. Thereupon the parties made the following agreement:

"Whereas, in the exchange of property this day between Mary E. Nolan, wife of Thomas M. Nolan, and Obadiah Harned, it appears that the building on the Dean street property conveyed by the said Nolan to said Harned encroaches on the property westerly thereof; and whereas, the parties have agreed to close the transfers on the understanding that a proper conveyance of the land encroached upon shall be procured by said Nolan to said Harned at her own expense: Now, therefore, in consideration of the premises, and the sum of one dollar each to the other in hand paid, the receipt whereof is hereby acknowledged, it is hereby agreed that said Harned shall hold the sum of five hundred (500) dollars, without interest, payable to said Nolan as soon as she shall procure a proper conveyance of said strip of land encroached upon, as shown by survey of H. L. Bartlett, city surveyor, and, in default of procuring said conveyance within six months from date by said Nolan, it is agreed that said Harned may procure the same, charging the expense thereof to said funds in his hands.

"Signed, sealed, and delivered this 7th day of May, 1895."

The title was thereupon passed, and the defendant paid the money due to the plaintiff under the contract, with the exception of $500, which he retained under the agreement recited. The plaintiff obtained no release from the owners of the adjacent lot. On the 17th of July, 1895, she brought this action to cancel and declare void the agreement of May 7th, and to recover the sum of $500 retained by the defendant. As ground for this relief she alleged in her complaint that the defendant falsely and fraudulently pretended to her that the building on the Dean-street lots encroached on property to the westerly thereof not owned by her, and that the same was shown by the survey of Bartlett, the city surveyor. The special term decided the case in the plaintiff's favor, not on the ground of fraud, but "upon the ground that said agreement was made and executed by mutual mistake, through the assertions, representations, and demands made by the defendant Harned." From that judgment the defendant appeals.

We are of opinion that there is not only no evidence on which to base the charge of fraud, but none to sustain the finding of the trial court that the agreement was executed under mistake. On the trial the surveyor, Bartlett, was sworn as a witness. He testified to the accuracy of his survey, and his plot of that survey was placed in evidence. By that survey it appears that the westerly house extends four inches to the west beyond the westerly line of the property described in the deed. This was the survey produced at the time of passing the title. To entitle her to relief, it was incumbent on the plaintiff that she should show affirmatively that this survey was erroneous. Instead of so doing, I can find no evidence whatever in the case to impeach it. Austin Ludlam, a city surveyor, was sworn for the plaintiff. He testifies as to the identity of the lots conveyed to and by the plaintiff, and as to their location, but he says not a word as to the location of the buildings and structures on those lots. It seems to me that at this point the trial judge must have misapprehended the objection raised by the defendant on closing the title, and as security against which the agreement was given and the $500 retained. There is no question made that the title of the plaintiff to the plot of land described by metes and bounds in the deed executed by her was not perfect. The objection of the defendant

was that the buildings on those lots, to the extent of four and six inches on the westerly side, lay outside of them. The contract was not to convey the plot of land described by metes and bounds, but two houses and lots designated by certain street numbers. To carry out her contract it was therefore necessary that the plaintiff should convey a good title to all the land on which those houses stood, and, unless the plot described in her deed comprised all the land on which the buildings were constructed, she did not carry out her contract. That the land described in her deed and the land on which the buildings stood were not identical appeared by the survey of Bartlett, and that survey stands on the record in this case uncontradicted. Therefore, the representation on which the agreement was executed by the plaintiff appears affirmatively to be true.

On this appeal the respondent seeks to sustain the judgment below on the ground that a practical location of the westerly line of plaintiff's lots by her and the adjacent owner was established on the trial. I am not prepared to say that, even if such fact had been established on the trial, it would entitle the plaintiff to avoid the agreement. When the title came to be passed the defendant raised the objection that there was a discrepancy between the description in the deed and the survey. For this reason he declined to take the title. It may be that, if the plaintiff could establish the practical location of the line or adverse possession on her part, she might have compelled the defendant to take title. She could have stood on her rights, refused to sign the agreement of May 7, 1895, and sought to enforce specific performance of the original contract. She did not take that course, but acceded to the proposition of the defendant to the settlement of the point in dispute by executing the agreement of May 7th. There is nothing to show that the claim of the defendant was made in bad faith, nor would it establish that fact to show that the defect in the title could be cured by adverse possession or practical location. We are also of opinion that a practical location of the boundary line was not established in this case. To be controlling, the line so located must be acquiesced in for at least 20 years. Baldwin v. Brown, 16 N. Y. 359; Reed v. Farr, 35 N. Y. 113. The mere fact that the adjoining owner built his house back from the dividing line would not establish a practical location that would be conclusive upon him. No actual possession was shown by the plaintiff or her predecessors in title for a longer period than nine years. We shall not, however, discuss this question any further, as the facts may be changed on a new trial. Suffice it to say the plaintiff's title through this source was not so clearly shown that we can say that any court would have compelled the defendant to take her deed.

The judgment appealed from should be reversed, and a new trial granted, costs to abide the event.

BARTLETT, HATCH, and BRADLEY, JJ., concur.

GOODRICH, P. J. (dissenting). The plaintiff, Mrs. Nolan, agreed to sell to the defendant Harned "the two houses known as 'Nos. 755

and 757 Dean street,' \* \* \* said lots together being forty-nine feet ten inches by one hundred and ten feet." There is no description by metes and bounds or by reference to any map. When the title was closed, Harned claimed that the westerly wall of No. 755 encroached upon the property on the westerly side, owned by Barr, and by agreement retained $500 of the purchase money until Mrs. Nolan should have obtained a proper conveyance of the land, upon which it was claimed by the defendant there was an encroachment, and, in default of her procuring such conveyance, Harned was to procure the same, charging the expense to the $500 fund in his hands. This agreement was made May 7, 1895. Nothing was done by either party in the way of procuring a release, but this action was commenced about July, 1895, to set aside the written agreement and secure the repayment of the $500, on the ground that it was falsely represented by Harned that the westerly wall of No. 755 encroached upon the adjoining premises, and that he knew such representation to be false, and that Mrs. Nolan was deceived thereby, and that the building does not encroach upon the Barr lot.

While the learned judge at special term does not in express terms decide whether there was or was not an encroachment, he inferentially decides that there was none when he bases the judgment that the agreement be set aside and the $500 returned to the plaintiff "upon the ground that said agreement was made and executed by mutual mistake, through the assertions, representations, and demands made by the defendant Harned." The deed to Nolan conveyed a lot 50 feet in width, but, there being some question as to an encroachment of the armory on the easterly part of his easterly lot, Nolan conveyed only 49 feet and 10 inches to Harned. The complaint describes the premises as "Nos. 199 and 201 on the Van Cleef map, beginning at a point 325 feet easterly from Underhill avenue, and extending 49 feet 10 inches on Dean street." The difficulty in the case, and probably the misapprehension of the parties, arise from the fact that different methods of describing and locating the several lots are used. The three deeds in the Nolan chain of title bound the lot by a line commencing at a point 325 feet easterly from Underhill avenue, at a time apparently before the laying out of Washington avenue. These deeds were executed in 1873 and 1874. The lots are stated to be 199 and 201 on the Van Cleef map, filed in 1841. The three deeds in the Barr chain of title bound the premises by a line commencing at a point 20 feet from Washington avenue. These deeds were executed in 1884, 1890, and 1895. The lot is stated to be No. 18 on the assessor's map. Ludlam, the surveyor, testifies that the entire distance from Underhill avenue westerly to Grand avenue is 825 feet, and by the Van Cleef map and the assessor's map, both in evidence, he demonstrates that lot No. 18 on the assessor's map, the Barr lot, is identical with lot 197 on the Van Cleef map; and that lot 17, the westerly Nolan lot, is identical with lot 199 on the Van Cleef map, and that the distance of the westerly line of the Nolan lot is 500 feet from Grand avenue and 45 feet from Washington avenue. The defendant put in evidence a map made by Mr. Bartlett, a surveyor, on which it is stated that the westerly line of

the Nolan house encroaches four inches on the Barr lot, but the map shows the easterly line of the Barr lot to be 45 feet from Washington avenue and 325 feet from Underhill avenue, which is the precise distance of the westerly line of the Nolan lots, and both these distances are exactly laid down and confirmed on the Van Cleef map and the assessor's map. Thus it appears that the easterly line of the Barr lot and the westerly line of the Nolan lot are coincident, that Barr has his 25-foot lot, and that his building is within the lines of his own lot, No. 18; that Harned has the adjacent lot, No. 17, and that the westerly wall in question is within the lines of his lot, and does not encroach upon the Barr lot. In the case of Gallagher v. Quinlan, 10 App. Div. 402, 41 N. Y. Supp. 874, recently decided by this court, in a submission of a controversy as to a description of real property in a will, it was held that where a description is made up of more than one part, and one part of the description is true and another false, if the part which is true describes the subject with sufficient legal certainty, the untrue part will be rejected. In this respect there seems to be no difference between a devise by will and a conveyance by deed.

There was also evidence showing what is termed a "practical location" of the dividing line by the erection of a fence, which stood for over 20 years, by Nolan's first building of a stable up to the dividing line, as claimed by the plaintiff, and by his subsequent building of the wall of the present structure in the same position. We are therefore of opinion that the definite and true description of the two lots, as shown by the numbers on the Van Cleef map and the assessor's map, both of which are of record, must prevail, and it follows that there is no encroachment on the Barr lot, and that the houses 755 and 757 are located wholly within the lines of the Nolan lots. There is no evidence supporting the contention of fraudulent representation on the part of Harned. Whether or not there was a mistake as to the location of this dividing line, and whether the westerly wall of No. 755 actually encroached upon the Barr lot or not, was a question of fact. It is well settled that an action may be maintained for the recission of a contract in a proper case, even though no action could be had for deceit. In the case of Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, Judge Andrews says, at page 129, 147 N. Y., and page 414, 41 N. E.:

"The law affords remedies for the consequences of innocent misrepresentation. A contract induced thereby may, in many cases, be avoided, and the equitable powers of courts are frequently interposed for the rescission of contracts or transactions based upon mistake or innocent misrepresentation. While the common-law action of deceit furnishes a remedy for fraud which ought to be preserved, we think it should be kept within its ancient limits, and should not, by construction, be extended to embrace dealings which, however unfortunate they may have proved to one of the parties, were not induced by actual intentional fraud on the part of the other."

The case of Crowe v. Lewin, 95 N. Y. 423, was an action to rescind a contract for the exchange of real estate on the ground of fraud. The court refused to find fraud. The defendants claimed that they intended to convey land which was actually owned by them, but, by mistake, described in their deed lots which they did not own.

The court held that the plaintiff was entitled to equitable relief whether the case was one of fraud or mistake; that if it was a mistake the minds of the parties never met, and no actual contract was made. The authorities on this subject are numerous, but enough have been cited to justify the court below in setting aside the contract on the ground on which its judgment is based, viz. mutual mistake through the representations of the defendant Harned. If it be said that by the agreement the defendant had six months in which, if the plaintiff failed to procure a deed, he had the right to procure it himself, and this action is premature, and cannot be maintained till the expiration of that time, the answer is plain that it was not only the right, but also the duty, of the plaintiff to promptly disavow the contract as soon as the falsity of the representation was discovered.

The judgment should therefore be affirmed, without costs.