### BELL v. HAYES.

(Supreme Court, Appellate Division, Second Department. April 19, 1901.)

1. BOUNDARIES—PRACTICAL LOCATION.
  Owners of three adjoining lots abutting on the seashore, each lot being subject to a right of way two rods wide and adjoining the strand, maintained fences on the boundary nearest the sea for 45 years,—each fence beginning where the other ended, and being substantially in a continuous line; and there was a well-defined wagon track close to the fence. The owners continued to use the right of way as thus indicated. *Held*, that such facts authorized a finding that the boundary of the right of way was located by the "mutual act and acquiescence of the parties," and that it was not necessary to prove that there was any formal agreement between the parties.

2. SAME—AMBIGUITY—PAROL EVIDENCE.
  Where the word "strand" was used as a boundary in a deed, proof that the shore gained and lost by the action of the water justified the admission of evidence of a practical location by the parties in interest, conceding the necessity of ambiguity in the description to justify such evidence.

3. ADVERSE POSSESSION—PRESUMPTIONS.
  An uninterrupted enjoyment of a right of private way over the land of another for 20 years, with the acquiescence of the owner, amounts to an adverse enjoyment sufficient to raise a presumption of a grant; and such use will be presumed to be under a claim of right, and not by the favor of the owner.

Appeal from trial term, Suffolk county.

Action by R. Walter Bell against Elizabeth Hayes. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Charles N. Morgan (George E. Morgan, on the brief), for appellant. Walter H. Jaycox, for respondent.

GOODRICH, P. J. The plaintiff claimed that he was the owner of certain premises on, and running down to the ordinary high-water mark at, Great South Bay, Long Island, upon which he had built a fence, and that the defendant, without his consent, took down and removed a portion of such fence, thus disturbing him in the use of his land, to his damage. The defendant answered, denying the plaintiff's ownership, and alleged that she was the owner of the strand in front of the plaintiff's premises, and of a right of way two rods wide above the strand; that the fence was built across the strip over which she had the right of way; and that it was removed for the purpose of permitting her to use her right of way. The trial turned upon the question whether the predecessor in title of the plaintiff and defendant had made a practical location of the northern boundary of the strip over which the right of way ran, and, the question being submitted to the jury, a verdict was rendered for the defendant, and the plaintiff appeals.

I cannot state the facts out of which the controversy arose, and the question at issue, any more clearly or concisely than was done by the learned justice in his charge, and therefore quote at length from it,— premising that the plaintiff takes title to what I shall term the "upland," north of a fence which ran nearly parallel to the shore, through William B. Arthur; and the defendant, to what is called the "strand," south of such fence, through her mother, Mary Louisa Mills:

"Mary Louisa Mills, William B. Arthur, and Thomas O. Arthur owned a piece of land which bordered on the South Bay and extended some distance into the interior. They divided that land between themselves by deeds from each to the others; Mrs. Mills taking the western, Mr. William B. Arthur the middle, and Mr. Thomas O. Arthur the eastern third. In describing these three parcels they made the south boundary the 'strand,' so that the three parcels, as carved out, did not go to the bay, but went to the strand. And in this description there was reserved in front of each parcel, and adjoining the strand, a right of way two rods in width for the use of all three of these people. So that in front of this entire strip of land adjoining the strand there was a two-rod strip over which each and all of them had the right to pass; Mrs. Mills having the right to pass east and west over the land of William B. Arthur and Thomas O. Arthur; Thomas O. had the right to pass over the land of William B. Arthur and of Mrs. Mills; and William B. Arthur, the right to pass over the land of Mrs. Mills and Thomas O. Arthur. In dividing the strand, Thomas O. and William B. Arthur gave to Mrs. Mills one-third the entire shore front of strand. This brought her strand—some 75 or 80 feet of it—in front of the piece deeded to William B. Arthur, so that she owned in front of William B. Arthur's land a strip of strand about 75 or 80 feet in length, and she had a right to go above that on a two-rod right of way. The dispute in this case is as to what is the particular location of the strand that the defendant, the daughter of Mrs. Mills, and succeeding to her rights, confessedly owns, and of the two-rod right of way above it. She has the right to the strand, so called, and to the two-rod right of way; and the only question for you to determine is, how far north do they extend? The plaintiff, Mr. Bell, claims that the 'strand' means, and must be interpreted to mean, simply the few feet of space washed by the tide between high and low water mark, and that the defendant is entitled only to that and to a two-rod right of way above it; and he claims that all above that two rods and the strip between high and low water mark belong to him absolutely, and that he has the right to bar the defendant out of it. He put up a fence upon that land above this space, and the defendant tore it down. If the defendant is right in her contention, she had a right to tear it down, and you cannot find a verdict

against her. Counsel for plaintiff has claimed that it was the duty of the court to hold, as matter of law, that the deed to the defendant conveyed simply and only the strand between high and low water mark, and that she has a right of way two rods above it, and that there her right stopped, and she had no right to introduce evidence that she owned any more. The law is— and I charge it to be such—that Mrs. Mills and her brothers, William B. and Thomas O. Arthur, had a right to locate their boundaries,—to go upon their land together and define where were the limits of the strand and of the right of way; and if they made such a location, and observed it, that controls this litigation."

The plaintiff excepted to the last paragraph, and we are thus brought to the main question argued upon the appeal. The plaintiff contends that the rule as to "practical location" will prevail against ·the apparent description contained in a deed only—First, by proof of some positive act, in which both owners concur, done for the purpose of making such location, followed by mutual and continued acquiescence for not less than 20 years; second, where there is ambiguity in the words of the deed, or monuments therein named have been obliterated, whereby a dispute as to the boundary has arisen, and been settled by the owners; third, where a boundary has been agreed upon between parties, and in reliance thereon one has made improvements, in which case the rule of estoppel in pais might apply. I need not discuss the third ground, as I am of opinion that evidence as to the practical location was admissible on the other two grounds. The counsel cites Corning v. Factory, 44 N. Y. 577, where the court said (page 595):

"In order to establish a line by what is called 'practical location,' it must actually be located, and must be acquiesced in for a long time,—probably, at least, twenty years,—unless there is an element of estoppel in the case. [Citing cases.] To constitute a practical location of a line or a lot requires the mutual act and acquiescence of the parties. Here there is no evidence whatever that the plaintiffs ever participated or acquiesced in the location of the one-acre lot, so as to include the piece awarded to them, or that they ever knew that it was so located. There can be no claim that any line was practically established before the dock was built, and when that was built the plaintiffs objected, and there is no proof that they ever acquiesced in it. On the contrary, they objected, and within thirteen years commenced this action."

It will be observed that the court says that the dock referred to was built by the defendant, and that the plaintiff did not participate or acquiesce therein, and that the action was begun within thirteen years thereafter. In the case at bar the facts are very different. Evidence was given that immediately after the partition, in 1853, each of the parties to the partition deed erected or maintained a fence on the southerly boundary of his land, which is claimed by the defendant to be the northerly boundary of the right of way, the fences being substantially in a continuous line, each beginning where the other ended; that these fences remained in position for many years; that there was a well-defined wagon track in close proximity to the fence; that the owners of the several plots continued thereafter to use the right of way as thus indicated; and that no one objected until the plaintiff acquired his title, in 1898, when for the first time the claim was made that the right of way strip should be located further to the south and nearer to the shore, and in accordance with this view the new and obstructing fence across the strip was erected by

him.   This evidence was sufficient to authorize a finding that the
northerly line of the right of way was located by "the mutual act and
acquiescence of the parties," and had therafter remained in common
use by the parties for about 45 years.   It is not necessary to prove
that there was any formal agreement between the parties.   That may
be inferred or implied from the acts of the parties as they appear on
the record.   In addition to this, there was evidence of declarations
as to his rights by the common predecessor in title of both parties,
William B. Arthur, while he owned and was in possession of the up-
land and before its conveyance to the plaintiff.   This declaration cor-
roborated the location and use of the right of way strip in the place
claimed by the defendant.

It is erroneous to suppose that practical location may be proved
only in cases where there is ambiguity in the description of a deed.
In Sherman v. Kane, 86 N. Y. 57, the court said (page 73):

"The doctrine as to the practical location of a boundary line is well settled
in the courts.   It was adopted as a rule of repose, with a view of quieting
titles, and rests upon the same ground as the statute in reference to adverse
possession which has continued for a period of twenty years.   Baldwin v.
Brown, 16 N. Y. 359; Adams v. Rockwell, 16 Wend. 285.   It applies not only
to cases of disputed boundary, but to those about which there can be no real
question.   See cases last cited; also Vosburgh v. Teator, 32 N. Y. 561."

But, if it were necessary to resort to ambiguity in the descriptions
used in the deeds, it might easily be discovered in the frequent use of
the word "strand" as one of the boundaries of the properties.   This
word occurs in the three partition deeds; e. g. as to the upland,
"bounded southerly by the strand"; "also one-third of the strand ly-
ing between" the parts of the strand of the other parties.   It also
appears in the deed to the plaintiff's mother, Mrs. Mills, bounded
"southerly by the strand," and in other deeds contained in the record.
While, in lexicons, the word "strand" is defined to be the equivalent
of "beach," which is the space on the shore between ordinary high and
low water mark (3 Am. & Eng. Enc. Law [2d Ed.] p. 901),—a defi-
nition conceded by both parties,—it is well known that a strand on
the ocean shore does not always continue to maintain its location
within definite lines.   High and low tide marks vary almost daily,
and there are always more or less erosion and increment of the shore.
Here there is testimony. that the shore gained and lost by the action
of the water,—in other words, there was a changing line of strand;
and such a changing line justified the admission of evidence of a
practical location by the parties in interest.   In Katz v. Kaiser, 154
N. Y. 294, 48 N. E. 532, it was declared to be the "settled rule in this
state, resting upon public policy, that a practical location of bound-
aries, which has been acquiesced in for a long series of years, will not
be disturbed."   In that case there was no evidence of a mutual loca-
tion.   One party built a wall which encroached upon the adjoining
premises, and remained so for 30 years without objection.   The court
held that there was a practical location of the boundary line.   Avery
v. Woolen Co., 82 N. Y. 582, confirms this view,—that there need not
be proof that there was originally any mutual agreement between
the parties.   The case turned upon the existence of a fence between
property of different owners.   "There was no evidence," said the court

(page 588), "showing when this division line was first established. The first we know anything about it, prior to 1830, there was a fence upon that line, and the great preponderance of the evidence is that the fence has never been changed. It has been reconstructed and repaired always, as I think, upon this same line. In 1859 the fences between these lands were divided, and the portion assigned to each owner which he was to maintain, and the fences have been maintained in pursuance of that division ever since. These facts constitute a strong case of practical location, and a line thus established should not be disturbed. Baldwin v. Brown, 16 N. Y. 359."

· In addition to this, an uninterrupted use and enjoyment of a right of private way over the land of another for 20 years, with the knowledge and acquiescence of the owner, amounts to an adverse enjoyment sufficient to raise a presumption of a grant, and the use of such an easement for 20 years will be presumed to be under a claim and assertion of right, and not by the leave or favor of the owner; and such a use will not only give a title by prescription, but will authorize the presumption of a grant. Miller v. Garlock, 8 Barb. 153. The doctrine of this case was declared, also, in Crounse v. Wemple, 29 N. Y. 540. In Townsend v. Bissell, 4 Hun, 297, the court said (page 301):

"Where the owners of adjoining lots make a way between them, each setting off an equal portion of land for that purpose, and they and their grantees continue to use it in common as a way for a period of twenty years, we think the reasonable inference is that such use was under a claim of right and adverse. It is not necessary to assert such right in words, or by any particular acts or formula of conduct, or to show that the exercise of the right did any actual damage to the party against whom it is claimed, provided it was an invasion of his right. Where there has been a use of an easement for twenty years, under such circumstances, it will, in the absence of contradictory or explanatory evidence, authorize the presumption of a grant."

I have not deemed it necessary to discuss other points raised by the learned counsel for the plaintiff in his very able brief; and I am clearly of opinion that the fencing of the northerly line of the right of way strip, and the common use of the road by all the owners for more than 40 years, constituted a practical location of the right of way, which may not be disturbed. The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.