HERMANN MEYER, PLAINTIFF, *v.* WILLIAM C. BOYD, DEFENDANT.

*Contract of sale — variance between the description in the contract and the actual occupation, owing to a surplus in the block of land as originally mapped — cured by acquiescence, and a distribution of the surplus among the several lot owners.*

In an action, brought to recover damages arising out of the alleged failure of the defendant to perform a contract for the sale of land on the south side of Eighty-first street, in the city of New York, described in the contract as beginning 125 feet easterly from the southerly corner of Third avenue and Eighty-first street, and having twenty-five feet frontage on said street, it appeared upon the trial that by actual survey the lot commenced 127 feet and one inch from said corner; that this disparity arose from the fact that upon the original map of the block of land in which this lot was situated the block was marked as being 600 feet in length, when, in fact, it was 610 feet; that at different times the owners of the property upon this block, in order to adjust this surplus of ten feet, had directed maps to be made distributing such surplus *pro rata* over the entire front of the block, which gave a surplus of five inches to every twenty-five feet; that ninety or 100 lots in the block had been laid out on the basis of such distribution, and, at least, seven or eight buildings had been built in accordance therewith; that according to such distribution the lot in question began at a point 127 feet and one inch from the corner.

*Held,* that the possession of the lot in question by the defendant from 1868 to 1887; the acquiescence of the adjacent owners on both sides in the location of the lot

line, as fixed by the distribution of the surplus feet in the block; and the fact that the defendant in his contract undertook to convey the lot, as it appeared on the original map and as it was conveyed to him, were a sufficient answer to the objection that the lot did not begin at the number of feet from the corner designated in the contract; that the case was not one in which the plaintiff should be relieved from his obligation to perform the contract made by him for its purchase.

Exceptions ordered to be heard in the first instance at General Term, after a trial at the New York Circuit on March 26, 1888.

*Abraham L. Jacobs,* for the plaintiff.

*Benjamin F. Kissam,* for the defendant.

Brady, J. :

This action was brought to recover the sum of $1,770, and interest, for the alleged failure of the defendant to perform his part of a contract for the sale and purchase of a lot of land on the south side of Eighty-first street in this city. The contract between the parties was dated the 12th of March, 1887. The controversy arises from the asserted incompetency of the defendant to convey the premises as described in the contract. The lot in that instrument is said to be one on the southerly side of Eighty-first street, begining 125 feet easterly from the southerly corner of Third avenue and Eighty-first street, and having twenty-five feet front and rear by 100 feet three inches in depth on each side, be the said several distances and dimensions more or less. And, further, being the same premises conveyed to the party of the first part (that is the defendant), by Peter Wooley and wife by deed dated April 1, 1868, and duly recorded. The deed to the defendant thus mentioned in the agreement between the parties to this action conveys a lot in the nineteenth ward of this city, which was part of the Harlem commons, and known on a map of them made by Charles Clinton, surveyor of the city of New York, as number thirty-four, and bounded and described as commencing at a point on the southerly side of Eighty-first street, distant 125 feet easterly from the southerly corner of Third avenue and Eighty-first street, etc., "be the said distances more or less." It appeared upon the trial, from an actual survey, that the lot commences 127 feet one inch from the southerly corner of Third avenue and Eighty-first street, and not 125 feet; but this

disparity seems to have arisen from the fact that upon the Clinton map the block was marked as 600 feet in length, when, in fact, it was 610 feet on the lines of the streets. It further appears that the first map of the Harlem commons was made by Charles Clinton in December, 1824, and that from December, 1829, down to December, 1861, the descriptions in the several conveyances relating to this particular locality were by the block numbers on the Clinton map, and one conveyance in 1848, of lot number thirty-four in addition to this map number, is described as twenty-five feet in front and rear, and 100 feet deep. In October, 1866, a conveyance was made of the lot in dispute, describing it as number thirty-four on the map already mentioned, and as beginning 125 feet from the Third avenue, with other distances ("be the said distances more or less"). In 1868 the conveyance of lot number thirty-four was made to the defendant by the same description, and in making the contract with the plaintiff it was expressly stated, and, therefore, expressly understood, that the premises purchased by the plaintiff were those thus conveyed to the defendant. There is no dispute as to the performance by the defendant of the contract in all other respects, than the one particularly named.

It further appears that the defendant occupied the lot known as No. 34 on the Clinton map as it exists, namely, 127 feet and one inch distant from the Third avenue, from April 1, 1868, to the day of the trial; and that prior to November 17, 1877, a brick wall had been erected on the lot adjacent on the west, running about eighty-two feet nine inches in depth from the southerly line of Eighty-first street, and distant 127 feet one inch from the Third avenue. It also appears that Mr. Ewen, who is a surveyor of many years' experience, for a long time familiar with the Harlem commons, had frequently made surveys of them, and had examined the map called the Clinton map, and knew of the error suggested about the length of the block on Eighty-first street; and, further, that at different times the owners, to adjust the surplus of ten feet in the length of the block, had directed him to locate them by making a distribution of them *pro rata* over the entire front of the block, which gave a surplus of five inches to every twenty-five feet. He had surveyed, it appears, ninety or a hundred lots on that block on the basis of that distribution, and he testified that quite a number, at least seven

or eight, buildings on that block had been built on that basis, making, as he said, " the distribution come correct, between two and three feet of the ten being distributed;" that his knowledge in regard to the buildings on the property began twenty years ago as a surveyor in that immediate neighborhood; and that from that time down to the present, buildings had been located as he stated, and five inches divided to every twenty-five foot lot within the bounds of the Harlem commons and Second and Third avenues; and he further said that lot No. 34 had its exact location according to the distribution which was adopted. The evidence, it is true, relating to the appropriation of the ten feet over the entire front stated, was objected to, but it clearly related to the question of locality and, therefore, of title, and was admissible, if for no other reason than to show possession and acquiescence, not only of the defendant, but others on the corrected length of the block. It further appears that the adjacent lot to the one in question on the west, in a deed dated December 30, 1882, is described as beginning 101 feet eight inches from the Third avenue, running thence easterly twenty-five feet and five inches along Eighty-first street, thus making 127 feet one inch to the lot in question; and, further, that the lot adjacent to the one in question on the east, in a deed dated April 28, 1887, is described as beginning 152 feet six inches from the Third avenue, which is the easterly line of the lot in question.

This array of facts seems to remove all doubt about the locality of the lot which the defendant intended to convey to the plaintiff, and all doubt of the defendant's title to it. Adjacent owners, as we have seen, have conveyed their property upon the distance of the defendant's lot from the Third avenue, being 127 feet one inch, and this acquiescence is strengthened by the erection, on the westerly side, of a brick wall upon the same theory. Independently of this monument, however, created by the building of the wall, the possession of the lot by the defendant from 1868, the acquiescence stated of the adjacent owners on both sides of it, the fact that the defendant undertook to convey it as it appeared on the Clinton map, and as it was conveyed to him, as we have seen, by the terms of his contract with the plaintiff, and the absence of any dispute about it, the objection interposed is not meritorious but technical. There is no pre-

tense that the plaintiff could not acquire the title to the lot with the dimensions by which it was described, or that in any way he had been deprived of the area which those dimensions would import. There can be no pretense that he would be subjected to any interference on the part of the adjacent owners, one of them having built a wall and the other having conveyed his property, as already suggested, upon the understanding that the plaintiff's lot was, in fact, 127 feet one inch distance from the Third avenue. In addition to this, the evidence shows that there existed a necessity for this change in consequence of and to correct the error that was made as to the length of the block. It was clearly the intention, it must be said, of all the grantors ,including the defendant, to convey the lot No. 34, as it appeared on the Clinton map, by the actual measurements approaching it, and this intention should govern. This is the rule. (*French* v. *Carhart*, 1 Comst., 96; *White* v. *Williams*, 48 N. Y., 344.) And where there is a doubt about the location, it is to be ascertained and determined by all the facts in the case. (*Townsend* v. *Hayt*, 51 N. Y., 656.) And in *Wendell* v. *The People* (8 Wend., 183), it is said that in the construction of grants, both courses and distance must give way to the natural or artificial monuments or objects; and courses must be varied and distances lengthened or shortened so as to conform to the natural or ascertained objects or bounds called for by the grant. See, also, *White* v. *Williams* (*supra*), where that case is cited and approved and its doctrine applied. There is no reason why the error made in the Clinton map as to distance should prevail and be allowed to affect the title of the defendant and others under the facts and circumstances disclosed. Each owner is protected by the readjustment which controls and overcomes the original error, and subjects it to natural distances and establishes monuments. This is, therefore, not a case in which the doctrine of a doubtful title should be applied to relieve a purchaser from his obligation to complete. There is really no doubt whatever about the title of the defendant to the lot of land known as No. 34 on the Clinton map, and in his possession; nor is there any doubt that he could convey it as provided in the contract of sale between himself and the plaintiff. For these reasons, in addition to those already assigned, it seems to be imperative upon the court to direct

judgment for the defendant, sustaining the exceptions and rendering a new trial, with costs to abide the final event.

VAN BRUNT, P. J , and MACOMBER, J., concurred.

Judgment for the defendant sustaining the exceptions and ordering a new trial, with costs to abide the final event.

