(9 App. Div. 465.)

HELLER et al. v. COHEN.

(Supreme Court, Appellate Division, First Department.     October 23, 1896.)

1. DEED—CLERICAL ERROR IN DESCRIPTION.
    An error in describing premises as commencing at a certain distance from the "northwest" corner of certain streets will not affect the valid-

ity of the deed, where the balance of the description shows that "southwest" was intended.

2. VENDOR AND PURCHASER—SUFFICIENCY OF VENDOR'S TITLE.

A deed by a referee in a partition suit which correctly describes the premises intended conveys a good title, though the complaint and decree followed an erroneous description in the deed to a former owner, which error was continued in subsequent deeds, where such former owner took possession of the premises under his deed, and devised it by a correct description. 36 N. Y. Supp. 668, reversed.

Appeal from special term, New York county.

Action by John H. Heller, Jr., and William S. Heller, as executors and trustees of John H. Heller, deceased, against William Cohen. The complaint was dismissed (36 N. Y. Supp. 668), and plaintiffs appeal. Reversed.

The action is brought to obtain specific performance of a contract to purchase real property. The contract was made December 4, 1893. By it, the plaintiffs, as executors and trustees of John H. Heller, deceased, having a power of sale under the will, agreed to sell, and the defendant to purchase, the following described premises: "Beginning on the southerly side of Grand street, at a point distant seventy-five feet eleven and one-half inches westerly from the corner formed by the intersection of the southerly side of Grand street with the westerly side of Chrystie street; running thence southerly one hundred and twenty-five feet one inch; thence westerly, parallel or nearly so with Grand street, twenty-five feet one inch; thence northerly one hundred and twenty-five feet and three inches, to the said southerly side of Grand street; and thence easterly, along said southerly side of Grand street, twenty-five feet, to the point or place of beginning; be all said several distances and dimensions more or less. The premises hereby intended to be conveyed being known and designated as and by the street number two hundred and forty-five Grand street, as now built upon and inclosed." The premises consist of two plots, coming from different sources,— the first fronting on the south side of Grand street, between the Bowery on the west and Chrystie street on the east, and approximately 25 feet in front and rear, and 100 feet in depth; the second adjoining this parcel on the rear, and approximately 25 feet square. The plaintiff's chain of title to the first plot is as follows: In 1810, John Lawrence conveyed to Thomas White a piece of land "beginning at the distance of seventy-five feet from the northwest corner of First (now Chrystie) street on Grand street, and runs south one hundred feet, more or less, to Isaac Berrian's ground, by a straight line; then west twenty-five feet, more or less, to Thomas White's ground; then north one hundred feet, to Grand street, more or less; and then down Grand street, to the place of beginning, twenty-five feet, more or less." By White's will, probated in 1814, he disposed of considerable property on the south side of Grand street on this block. He first devised to his grandson Thomas White a piece of land commencing at the corner of the Bowery and Grand street, fronting 75 feet on Grand street, and 50 feet deep. He next devised to his granddaughter Margaret White a piece of land 26 feet 3 inches in front and rear, and 50 feet in depth, commencing at the easterly extremity of the preceding premises. He then devised to his granddaughter Ann White the premises "commencing in Grand street, at the easterly extremity of the last-mentioned lot, and running from thence easterly, along Grand street. twenty-five feet; from thence southerly, parallel to the Bowery, one hundred feet; and from thence westerly, parallel to Grand street, twenty-five feet; and from thence to the place of beginning." This is the property in suit. Ann White intermarried with Mead Darrow, and in 1820 she and her husband conveyed it to William Schott, by the same description, as to metes and bounds, contained in the deed from Lawrence to White. The premises are, however, stated to be the same which were conveyed by that deed, and devised by White, the deed and devise being accurately described. Schott conveyed to Charles Speaight in 1821, by the same metes and bounds, and the same reference to the deed and devise. Thereafter

Speaight died, intestate; the property was partitioned; and the plaintiffs' testator, John H. Heller, purchased it at the sale. The complaint and decree in the partition suit contain the same description, by metes and bounds, as the preceding deeds, but omit the reference to the original deed and devise. The referee's deed, however, after reciting the judgment, a sale thereunder at public auction, and confirmation of the report of sale, corrects the prior descriptions by conveying the property: "Beginning at the distance of seventy-five feet from the southwest corner of Chrystie (formerly First) street, on Grand street; * * * being the same premises of which Charles Speaight died seised; the said premises being the same as conveyed to the said Charles Speaight by William Schott, by deed dated May 1, 1821, and recorded in the office of the register of the city and county of New York on the seventh day of May, 1821, in Liber 151 of Conveyances, page 235."

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

A. Stern, for appellants.

Geo. H. Yeaman and Samuel B. Hamburger, for respondent.

BARRETT, J. The objections to the plaintiffs' title to the front portion of the tract sought to be conveyed are based upon the use of the word "northwest," instead of "southwest," by the deeds, in specifying the corner at which the description commenced, and upon the fact that the contract and surveys fix the easterly boundary of the property as 75 feet 11½ inches westerly from Chrystie street, while the deeds describe it as 75 feet from that point. It is well to state these objections separately, and to some extent they will need separate consideration, although each must be weighed in the light of the same facts.

The literal reading of this description would throw a great portion of the property into the bed of Grand street. It is quite plain, however, that this was not intended, and that the use of the word "northwest," instead of "southwest," was a clerical error. That the latter word was intended is evidenced by the context; that is, by the rest of the description. Grand street runs east and west. The Bowery and Chrystie street run north and south. The premises are described as being on Grand street, and as having buildings thereon; also, as bounded on the west by lands of Thomas White. They then run north 100 feet, to Grand street, and then down Grand street, to the place of beginning. Three sides of the lot are definitely located. To make the fourth, "southwest" will be construed as having been intended for "northwest." Brookman v. Kurzman, 94 N. Y. 272. In this case the word "southeasterly" was held to mean "southwesterly"; and the rule was laid down that, in construing the description clause in a conveyance, such an interpretation will be adopted as will give effect to the intention of the parties, if it can be ascertained from the instrument. Here, as in that case, the intrinsic evidence furnished by the deed makes it indisputable that the intent was to use the word necessary to perfect the description. Here, too, as there, the use of the wrong word was not such a defect as justified a purchaser in refusing to accept title.

But even if the inaccurate use of the word "northwest" in Lawrence's deed were sufficient, standing alone, to invalidate the title, there are other facts which make it plain that the plaintiffs' testator

got a clear record title from Thomas White to a plot of land 25 feet in front and rear, and 100 feet in depth, fronting upon Grand street, and in no way encroaching upon the bed of that street. His grantor, Lawrence, had undoubted title to such a plot. White went into possession under the deed which he received from Lawrence; and, when White died, he devised the plot to his granddaughter by a correct description. When she deeded it to Schott, the draftsman reverted to the incorrect description in the Lawrence deed, but referred to White's devise, and declared the property to be that which she got from this latter source. She was thus estopped to deny that the property was the same as that devised to her, and, to all intents and purposes, she conveyed it by the description contained in the devise. Bernstein v. Nealis, 144 N. Y. 347, 39 N. E. 328. The deed from Schott to Speaight was similar, with the result that the latter got a clear record title from Thomas White.

Coming to the partition suit, we find that, although the complaint and decree continue the erroneous description contained in all the deeds, the referee's deed corrects it by substituting "southwest" for "northwest." This, it is said, invalidates the referee's deed. In our judgment, no such result follows. The referee, in law and in fact, did sell the identical premises referred to in his deed. The decree directed the sale of these premises, and of none other. They were the same premises which were deeded to Speaight by his grantor, Schott. That deed was part of the record title. The partition suit had relation to those premises, and none other. Thus, the premises sought to be partitioned or sold were, to quote the language of the deed from Schott to Speaight, "the same premises which were devised by the said Thomas White * * * to his granddaughter Ann," and were conveyed by Ann to Schott. This deed from Schott to Speaight must be considered in construing the description in the partition proceedings and decree. It was the property obtained by that deed which was the subject-matter of the partition suit. The purchaser at the partition sale was bound by that deed, and all that it contained. Bernstein v. Nealis, supra. The referee's description was, in effect, the same as though such description had been emphasized by the references in Speaight's deed to the premises devised to Ann White, and by Ann White deeded to Schott, and by Schott to Speaight.

If the referee's deed were treated as invalid, what would be the effect? The record title would still be in the Speaight heirs. Any such claim on their part, however, would be manifestly untenable. They sold the property, received the proceeds, and are as much estopped to dispute the referee's deed as though they had themselves executed it. In making the transfer, the referee acted merely as the agent of the court. If he defectively executed the power delegated to him, the purchaser might have applied for a re-execution of the deed. By failing to do so, he certainly forfeited none of his rights. He was entitled to a conveyance of the property described in the complaint, since he bought and paid for it. His grantors (so we may term the heirs) are estopped to deny his claim. So, also, would any one be claiming under them, since the matter is of record. The fact

that the complaint and decree, in describing the property, omit the reference to the devise in White's will, does not curtail the plaintiff's rights. The case of Bernstein v. Nealis, supra, is in point. There a mortgage contained an erroneous description, together with a reference correcting it; and the complaint, decree, and deed, on foreclosure, omitted the reference. It was held that the decree did not blot out the record of the mortgage, and hence that parties claiming under the mortgagor took with notice that the deed carried title to the premises described in the mortgage. Similarly, here, purchasers from the Speaight heirs would have notice of the prior instruments in the chain of title, and, in particular, of the deed from Schott; thus learning the exact nature of the property which those heirs owned, and had disposed of by the partition suit. In fact, the referee's deed stated expressly, as already pointed out in the preliminary statement of facts, that the property was "the same premises of which Charles Speaight died seised," and which were conveyed to him by Schott in 1821. No exception can be taken to this addition in the referee's deed, for any searcher of the title must know that the proceeding was taken to dispose of land of which the intestate was actually seised. Thus, he would have notice of the immediate instrument creating the title.

It results from the foregoing that the plaintiffs' testator got a clear record title from Thomas White to premises of the proper dimensions, and lying entirely to the south of Grand street. There was, under this clear record title, continuous, adverse possession by the predecessors in interest of the plaintiffs' testator, and such testator himself, under claim of title through conveyances containing, as we have seen, a sufficient description, for a period of about 85 years. In addition to the evidence 'of the record, we have undisputed testimony that the plaintiffs' testator was in possession of the premises ever since the purchase, and in 1870 erected the four-story brick building which is now upon the land, and completely covers it. It also appears from the record of the partition suit that Speaight had been in possession of the premises ever since 1842. The plaintiffs have thus shown a marketable title, which the defendant may not refuse. Shriver v. Shriver, 86 N. Y. 575; O'Connor v. Huggins, 113 N. Y. 511, 21 N. E. 184.

So far only one result of the facts has been considered, viz. that the plaintiffs have acquired title to a plot of land, of the proper dimensions, entirely to the south of Grand street; that their rights are the same as if "southwest" had been used in the deeds instead of "northwest." But it is said that the contract calls for property beginning 75 feet 11½ inches westerly from Chrystie street, while, under his deeds, the plaintiffs' testator got title to property only 75 feet west. The easterly boundary of the property is, in fact, at the spot specified in the contract. This, it is said, will make it encroach upon the premises to the west. If it did, adverse possession would again be a sufficient answer. There is, in fact, however, no encroachment or possibility of one. As we have seen, the plaintiffs have the record title to a lot of a 25-foot frontage, lying entirely to the east of other property belonging (when the devise was made) to the common owner,

Thomas White. The surveys show that the plaintiffs' testator did not build upon an inch of ground which did not come to him under his deeds. The discrepancy is caused by the fact that the earlier conveyances were made in reliance upon what is known as the "Delancy Map." This map stated the distance from the Bowery to Chrystie street to be two hundred feet, whereas it is in reality over two feet longer. Eleven and one-half inches of this surplus have fallen to property to the east of that in suit, and this is the occasion of the discrepancy. The case is similar to Meyer v. Boyd, 51 Hun, 291, 4 N. Y. Supp. 328. There the owners, on learning of the surplus, prepared maps distributing it pro rata; and the acquiescence in these maps was held an answer to the plaintiff's complaint that the record title was not perfect, although the defendant had not adversely held his land for 20 years. The present case is even stronger. There is the same certainty that no adjoining owner has a legal claim to the strip, and there is also adverse possession confirming the title to it.

The objection to the title to the parcel in the rear is quite without merit, and does not need special consideration. It is completely answered by the sixth point of the learned counsel for the appellants.

The judgment should be reversed, and as the facts are all before the court, and a new trial could not change them, the plaintiffs should have judgment as prayed for in their complaint, with costs of the trial and appeal. All concur.